IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK11-41944-TJM |
| | ) | |
| GEORGE R. OSBORN, JR. | ) | CH. 13 |
| | ) | |
| Debtor(s). | ) | |

ORDER

This matter was submitted to the Court at a live evidentiary hearing held in Lincoln, Nebraska, on December 14, 2011. The issues involved Fil. #20, an Objection to Claim of Heather Eads, filed by the debtor; Fil. #26, Resistance, filed by Heather Eads; Fil. #35, Objection to Confirmation of Plan, filed by Heather Eads; and Fil. #41, Response to Objections to Plan, filed by the debtor. Trev Peterson appeared for the debtor and Heather Eads, a creditor, appeared pro se.

The creditor, Ms. Eads, is a former spouse of the debtor and is a holder of a claim arising out of the parties' dissolution of marriage decree. She asserts that her claim is a priority unsecured claim constituting a domestic support obligation. Debtor has objected to the classification of the claim as a domestic support obligation. Ms. Eads has also objected to the plan filed by the debtor asserting that the bankruptcy and the plan were not filed in good faith. The objection to claim is denied and the objection to the plan is granted. An amended plan and schedules are due February 27, 2012.

Background

The parties were married in April of 1995 and the decree of dissolution of marriage was entered on March 2, 2009. Three children were born of the marriage and the decree provided for joint custody, with the children residing on a permanent basis with Ms. Eads.

During the marriage, the parties purchased a home in Lincoln, Nebraska, and granted a deed of trust to Wells Fargo Home Mortgage. They also obtained a line of credit from Wells Fargo which was also secured by a deed of trust as a second lien.

In September of 2008, in contemplation of the forthcoming dissolution of marriage, the parties refinanced the home. They had incurred significant debt on the line of credit, resulting from, among other things, the expenses related to the premature birth of twins, and medical expenses and other expenses to meet the dietary needs of the children. They agreed as part of the refinancing that the note secured by the first deed of trust and the line of credit would be paid off and a new note secured by a new first deed of trust would be taken out with Wells Fargo, adding approximately $20,000.00 to the new note secured by the first deed of trust. A second note secured by a second deed of trust would be taken out for approximately $20,000.00. Anticipating the dissolution of marriage, Ms. Eads, formerly Ms. Osborn, and Mr. Osborn, agreed that she would keep the home, subject to her obligation to pay the first mortgage. He would agree to pay the second mortgage in the approximate amount of $20,000.00. Those terms were incorporated into the decree and property settlement agreement.

At the time of the decree, Ms. Eads' gross income was, according to the child support calculator attached to the property settlement agreement and included in this court file at Fil. #31-1,

$2,556.00 per month and the gross income of Mr. Osborn was $2,643.00 per month. Her net income was $2,212.41 and his net income was $2,053.96.

Pursuant to the decree, he was directed to pay child support in the amount of $741.00 per month, medical expenses not covered by health insurance, a portion of child care expenses, and the approximately $271.00 per month required to pay off the second mortgage.

She kept her vehicle, subject to its debt, the home, including any remaining equity, and he kept his vehicle and his retirement account which contained approximately $132,000.00.

The decree provided that, "Neither party shall be required to pay alimony to the other."

## Law and Discussion

The current statutory language and case law concerning the term "domestic support obligation" and the good faith requirement for confirmation of a Chapter 13 plan were discussed in detail by Chief Bankruptcy Judge Thomas Saladino in the Chapter 13 case of Timothy J. McPheron, 2010 WL 5173719, Case No. BK10-40861-TLS (Dec. 15, 2010). His explanation follows:

> Pursuant to 11 U.S.C. § 101(14A), the term "domestic support obligation" means:
>
> > [A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is –
> > (A) owed to or recoverable by –
> >     (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
> >     (ii) a governmental unit;
> > (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> > (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of –
> >     (i) a separation agreement, divorce decree, or property settlement agreement;
> >     (ii) an order of a court of record; or
> >     (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
> > (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.
>
> This definition was enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and has an impact throughout the

Bankruptcy Code on issues of discharge, the automatic stay, priorities, exemptions, the means test, and the calculation of disposable income in a Chapter 13 case. For purposes of the case at hand, discharge and priorities are at issue. Domestic support obligations are not discharged in Chapter 13 proceedings. See 11 U.S.C. § 1328(a) and 11 U.S.C. § 523(a)(5). Further, domestic support obligations are priority claims pursuant to 11 U.S.C. § 507(a)(1)(A). If, on the other hand, the obligation is not a domestic support obligation, it would fall under 11 U.S.C. § 523(a)(15), which obligations are not excepted from discharge in Chapter 13 cases, nor are they entitled to priority status.

The BAPCPA amendments that added § 101(14A) and altered §§ 523(a)(5) and (15) did not change the standard for whether an obligation is in the nature of support. When deciding whether a debt should be characterized as one for support or property settlement, "the crucial question is what function did the parties intend the agreement to serve when they entered into it." Boyle v. Donovan, 724 F.2d 681, 683 (8th Cir. 1984) (citing Williams v. Williams (In re Williams), 703 F.2d 1055, 1057 (8th Cir. 1983)). In making that factual determination, the court evaluates a number of factors, including whether the agreement contains a separate provision for alimony or child support, and whether the debt is conditional. Ahlf v. Ahlf (In re Ahlf), 354 B.R. 884, 887 (Bankr. S.D. Iowa 2006) (citing Morel v. Morel (In re Morel), 983 F.2d 104, 105 (8th Cir. 1992)). Other factors considered include:

> [T]he relative financial conditions of the parties at the time of the divorce; the respective employment histories and prospects for financial support; the fact that one party or another receives the marital property; the periodic nature of the payments; and, whether it would be difficult for the former spouse and children to subsist without the payments.

Ahlf, 354 B.R. at 887 (quoting Tatge v. Tatge (In re Tatge), 212 B.R. 604, 608 (B.A.P. 8th Cir. 1997)).

. . .

11 U.S.C. § 1325(a)(3) provides that a Chapter 13 plan must be proposed in good faith and not by any means forbidden by law. In discussing the good faith obligation, the Eighth Circuit Bankruptcy Appellate Panel stated:

> The relevant inquiry regarding good faith is "whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code." Education Assistance Corp. v. Zellner, 827 F.2d 1222, 1227 (8th Cir. 1987). However, the foregoing inquiry is governed by a "totality of the circumstances" test. Noreen, 974 F.2d at 76; LeMaire, 898 F.2d at 1349; In re Estus, 695 F.2d 311, 316 (8th Cir. 1982). Factors which are particularly relevant to determining good faith under the totality of the circumstances include: (1) the nature of the debt sought to be discharged; (2) whether the debt would be dischargeable in a

> chapter 7 bankruptcy case; and (3) the debtor's motivation and sincerity in seeking chapter 13 relief. LeMaire, 898 F.2d at 1349 (citing Estus, 695 F.2d at 317). See also In re Kurtz, 238 B.R. 826, 830 (Bankr. D.N.D. 1999) ("Further consideration must be given to the sincerity of the Debtor in putting forth his Chapter 13 plan of repayment and whether that plan demonstrates real sincerity on the part of [the Debtor] to repay his creditors as best he can in exchange for the liberal Chapter 13 discharge.") Another relevant factor in determining good faith is the Debtor's pre-filing conduct. LeMaire, 898 F.2d at 1352 (citations omitted). However, even in light of egregious pre-filing conduct by the Debtor, a chapter 13 plan may be confirmed if other factors "suggest that the plan nevertheless represents a good faith effort by the debtor to satisfy his creditors' claims." Id. (citation omitted).
>
> Banks v. Vandiver (In re Banks), 248 B.R. 799, 803 (B.A.P. 8th Cir. 2000).

McPheron, at 2-5.

The first issue to be addressed here is the debtor's objection to the claim of Ms. Eads. He asserts that the claim, which is based on the portion of the decree assigning to the debtor responsibility for payment of the note secured by the second deed of trust on Ms. Eads' home, is not a domestic support obligation. Although the decree contained an express provision for child support, as well as an express alimony provision providing that neither party shall pay alimony to the other, the evidence is that the parties planned to equalize their assets and their debt obligations to enable Ms. Eads to keep the home for herself and her children. Based upon her net monthly income at the time of the decree, it is clear that she would have been unable to retain the home with any reasonable degree of financial security if she was required to make the monthly payments on the second deed of trust. On the other hand, he left the marriage with a child support obligation of $741.00 a month plus the second mortgage obligation of approximately $271.00 a month to be paid, along with other living expenses, from a net income of more than $2,000.00 per month. He was apparently willing and able to make the payments for at least a year after the decree was entered. Then, perhaps because of the purchase of a new car, or his remarriage, his monthly income was not sufficient to pay his monthly living expenses and his obligations from the first marriage. To access his retirement funds, he quit his employment of 37 years, paid taxes on approximately $65,000.00 from the retirement account, and then proceeded to go through the balance of the cash received from liquidating the retirement account between March of 2010 and May of 2011.

During that time period, from the date he quit his job in March of 2010 until he obtained employment in August of 2011, he spent very little time attempting to obtain employment which would enable him to pay his obligations. He even told Ms. Eads on at least one occasion that he would arrange his financial situation so that he would have no money available to pay his obligations if she took him to court.

She did take him to court for failure to pay child support, failure to pay child care expenses and failure to pay medical expenses, plus failure to pay his obligation on the second lien. As a result, on July 18, 2011, he was found in civil contempt and sentenced to 30 days in jail. He was allowed to purge himself of contempt by making monthly payments of $50.00 per month on the

arrearage of the child care and child support, by making an immediate payment on the overdue medical expense, and by curing the delinquency on the second lien obligation. He was ordered by the state court judge in that contempt order, Fil. #100, to remain current on the payments of the second lien.

I find, based upon the intent of the parties when they refinanced the home and when they agreed on the property settlement agreement, that Mr. Osborn was taking responsibility for the second lien so that Ms. Eads and the children could stay in the home. That is the essence of a domestic support obligation and I so find that the requirement for him to pay it is a domestic support obligation which is non-dischargeable in a Chapter 13 case.

Turning now to the plan objection, Ms. Eads argues that the bankruptcy case was not filed in good faith and the plan was not proposed in good faith. Specifically, she asserts that the debtor did not list all of his assets when he filed the initial petition and schedules. She provided information, apparently to the trustee and to counsel for Mr. Osborn, concerning property that he had in his possession on the petition date that was not listed on the schedules.

In addition, on cross-examination by Ms. Eads at trial, Mr. Osborn admitted that although his amended schedules showed he paid rent in the amount of $300.00 per month, health insurance in the amount of $450.00 a month, and child care expenses in the amount of $182.00 a month, none of that was true. He has not paid rent to anyone for many months. He has lived temporarily with his sister and with his brother and, although he testified that he will pay them rent when he is able to, he has not yet done so. He had no explanation for the $450.00 per month health care expense that he put on his amended schedules.

Of the $182.00 a month that he listed as child care, he eventually suggested that perhaps $100.00 of it related to the $50.00 per month that he was paying to purge himself of contempt. He testified that he had recently paid an $82.00 medical bill, but was unable to explain what a one-time payment of an $82.00 medical bill had to do with his assertion that he paid at least that much on a monthly basis.

Finally, although he was ordered on July 18, 2011, to maintain payments on the second lien or be subject to a jailhouse opportunity, he filed this Chapter 13 bankruptcy case on the very next day. He has made no payments on the second lien for at least five months prior to the trial date in this case.

Although I could easily conclude that he provided erroneous rental and health insurance and medical care information to his attorney so that his amended schedules would show reduced net disposable income making him unable to pay the second lien monthly payments, I will reserve making such a finding. Ms. Eads is not interested in having Mr. Osborn's case dismissed so that he can be sent to jail for failing to obey the state court order. She is interested in receiving payments that he is obligated to pay. The best way to assure him that he is not going to jail and to assure her that she will receive the payments is to let him remain in Chapter 13 and file an amended plan that reflects the truth on the amended schedules and provides for payment of his divorce decree obligations.

If amended schedules continue to reflect inaccuracies with regard to his financial condition, or if an amended plan does not properly provide for his dissolution of marriage decree obligations, the case will be dismissed as one filed in bad faith and Mr. Osborn can take his chances outside the bankruptcy system.

IT IS ORDERED: The debtor's objection to claim of Heather Eads (Fil. #20) is denied. The objection to confirmation of plan, filed by Heather Eads (Fil. #35), is granted. An amended plan with amended schedules shall be filed no later than February 27, 2012.

DATED:    January 26, 2012

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
 *Trev Peterson
 *Heather Eads
 Kathleen Laughlin
 U.S. Trustee

* Movant is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.